**Semnar & Hartman, LLP**
Babak Semnar, Esq. (SBN 224890)
Jared M. Hartman (SBN 254860)
400 S. Melrose Drive, Suite 209
Vista, California 92081
Telephone: (951) 293-4187
Fax: (888) 819-8230

Attorneys for Plaintiff, MATTHEW REMMERS

**U.S. DISTRICT COURT**
**SOUTHERN DISTRICT OF CALIFORNIA**

MATTHEW REMMERS, an individual,

Plaintiff,

v.

SIERRA PACIFIC MORTGAGE COMPANY, INC.,

Defendants.

Case No.: '17CV1094 CAB NLS

**COMPLAINT AND DEMAND FOR JURY TRIAL FOR VIOLATIONS OF:**

1. **TELEPHONE CONSUMER PROTECTION ACT, 47 U.S.C. § 227(b);**
2. **STATE OF CALIFORNIA ROSENTHAL ACT, CALIF. CIV. CODE § 1788, et seq.;**
3. **STATE OF CALIFORNIA CONSUMER CREDIT REPORTING AGENCIES ACT, CALIF. CIV. CODE 1785, et seq.**

Plaintiff, MATTHEW REMMERS, an individual, by and through his attorneys of record, hereby complains and alleges as follows:

## INTRODUCTION

1. Plaintiff, by and through his attorneys of record, bring this action to secure redress from unlawful mortgage collection practices engaged in by Defendant SIERRA PACIFIC MORTGAGE COMPANY, INC. (hereinafter “Defendant SIERRA”) in violation of the State of California Rosenthal Act, California Civil Code § 1788-

1788.32 (hereinafter "Rosenthal" or "Rosenthal Act"); the Telephone Consumer Protection Act, 47 U.S.C. 227 (hereinafter "TCPA"); and the California Consumer Credit Reporting Agencies Act, Calif. Civ. Code 1785, *et seq.*, (hereinafter "CCCRAA").

2. In 15 U.S.C. § 1692(a)-(e), the U.S. Legislature made the following findings and purpose in creating the FDCPA:

> Abusive practices. There is abundant evidence of the use of abusive, deceptive, and unfair debt collection practices by many debt collectors. Abusive debt collection practices contribute to the number of personal bankruptcies, to marital instability, to the loss of jobs, and to invasions of individual privacy.
>
> Inadequacy of laws. Existing laws and procedures for redressing these injuries are inadequate to protect consumers.
>
> Available non-abusive collection methods. Means other than misrepresentation or other abusive debt collection practices are available for the effective collection of debts.
>
> Interstate commerce. Abusive debt collection practices are carried on to a substantial extent in interstate commerce and through means and instrumentalities of such commerce. Even where abusive debt collection practices are purely intrastate in character, they nevertheless directly affect interstate commerce.
>
> Purposes. It is the purpose of this title [15 USCS §§ 1692 et seq.] to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses.

3. In California Civil Code § 1785.1(a)-(g), the California Legislature made the following findings and purpose in creating the CCCRAA:

> (a) An elaborate mechanism has been developed for investigating and evaluating the credit worthiness, credit standing, credit capacity, and

general reputation of consumers.

(b) Consumer credit reporting agencies have assumed a vital role in assembling and evaluating consumer credit and other information on consumers.

(c) There is a need to insure that consumer credit reporting agencies exercise their grave responsibilities with fairness, impartiality, and a respect for the consumer's right to privacy.

(d) It is the purpose of this title to require that consumer credit reporting agencies adopt reasonable procedures for meeting the needs of commerce for consumer credit, personnel, insurance, hiring of a dwelling unit, and other information in a manner which is fair and equitable to the consumer, with regard to the confidentiality, accuracy, relevancy, and proper utilization of such information in accordance with the requirements of this title.

(e) The Legislature hereby intends to regulate consumer credit reporting agencies pursuant to this title in a manner which will best protect the interests of the people of the State of California.

(f) The extension of credit is a privilege and not a right. Nothing in this title shall preclude a creditor from denying credit to any applicant providing such denial is based on factors not inconsistent with present law.

(g) Any clauses in contracts which prohibit any action required by this title are not in the public interest and shall be considered unenforceable. This shall not invalidate the other terms of such a contract.

4. In Calif. Civil Code § 1788.1(a)-(b), the California Legislature made the following findings and purpose in creating the Rosenthal Act:

(a)(1) The banking and credit system and grantors of credit to consumers are dependent upon the collection of just and owing debts. Unfair or deceptive collection practices undermine the public confidence which is essential to the continued functioning of the banking and credit system and sound extensions of credit to consumers.

> (2) There is need to ensure that debt collectors and debtors exercise their responsibilities to another with fairness and honesty and due regard for the rights of the other.
>
> (b) It is the purpose of this title to prohibit debt collectors from engaging in unfair or deceptive acts of practices in the collection of consumer debts and to require debtors to act fairly in entering into and honoring such debts, as specified in this title.

## JURISDICTION AND VENUE

5. This action arises out of violations of the Federal TCPA, over which the U.S. District Court has original subject matter jurisdiction pursuant to 15 U.S.C. § 1681p; and the U.S. District Court has supplemental jurisdiction over all remaining state law causes of action pursuant to 28 U.S.C. § 1367(a).

6. Because Defendant SIERRA conducts business within the County of San Diego, State of California, by providing home mortgage loans to residents within the County of San Diego, and then undertaking purposeful efforts to contact such residents for collection upon the mortgage accounts, personal jurisdiction is established.

7. Venue in this District is proper pursuant to 28 U.S.C. § 1391 because the property that is the subject of Defendant's collection efforts giving rise to this matter is located within the City of National City, County of San Diego, and because Defendant has purposefully conducted business within this judicial district at all times relevant.

## PARTIES & DEFINITIONS

8. Plaintiff is a natural person, and is therefore a "person" as that term is defined by California Civil Code § 1788.2(g) of the Rosenthal Act.

9. Plaintiff, as a natural person allegedly obligated to pay a consumer debt to Defendant, alleged to have been due and owing, is therefore a "debtor" as that term is defined by California Civil Code § 1788.2(h) of the Rosenthal Act.

10. As a partnership, corporation, limited liability company, or other similar entity, Defendant SIERRA is a "person" within the meaning of California Civil Code §

1788.2(g) of the Rosenthal Act.

11. Defendant SIERRA alleged that Plaintiff owed them a monetary debt, arising out of a home mortgage loan provided by Defendant to Plaintiff, which makes Defendant a "creditor" under California Civil Code § 1788.2(i) of the Rosenthal Act.

12. Defendant SIERRA alleged that Plaintiff owed them money that they were allegedly collecting for a home mortgage loan, and Plaintiff is informed and believes that the money alleged to have been owed to Defendant therefore originated from monetary credit that was extended primarily for personal, family, or household purposes, and is therefore a "debt" as that term is defined by California Civil Code § 1788.2(d) of the Rosenthal Act.

13. Defendant SIERRA was attempting to collect on a debt that originated from monetary credit that was extended primarily for personal, family, or household purposes due to medical services performed upon Plaintiff to purchase residential property and real estate, and was therefore a "consumer credit transaction" within the meaning of California Civil Code § 1788.2(e) of the Rosenthal Act.

14. Because Plaintiff, a natural person allegedly obligated to pay money to Defendant SIERRA arising from a consumer credit transaction, the money allegedly owed was a "consumer debt" within the meaning of California Civil Code § 1788.2(f) of the Rosenthal Act.

15. Defendant SIERRA is a person who, in the ordinary course of business, regularly and on behalf of itself, engages in debt collection, because it took actions on its own behalf in connection with the collection of a consumer debt, and is therefore both a "debt collector" and undertakes "debt collection" as defined in Calif. Civ. Code 1788.2(b)-(c) of the Rosenthal Act.

16. As it pertains to the California CCRAA, Plaintiff is a natural person, and is therefore a "consumer" as that term is defined by Calif. Civ. Code § 1785.3(b) of the California CCRAA.

17. As it pertains to the California CCRAA, the causes of action herein

partially pertain to Plaintiff's "consumer credit reports", as that term is defined by Calif. Civ. Code § 1785.3(c) of the California CCRAA, in that inaccurate misrepresentations of Plaintiff's creditworthiness, credit standing, and credit capacity were made via written, oral, or other communication of information by a consumer credit reporting agency, which is used or is expected to be used, or collected in whole or in part, for the purpose of serving as a factor in establishing Plaintiff's eligibility for, among other things, credit to be used primarily for personal, family, or household purposes, and employment purposes.

18. Defendant is a partnership, corporation, association, or other entity, and is therefore a "person" as that term is defined by Calif. Civ. Code § 1785.3(j) of the California CCRAA.

## FACTUAL ALLEGATIONS

19. Plaintiff is a 45-years old, law-abiding citizen who has dedicated his life and career to serving his community as a peace officer, is now a retired Detective from the City of National City Police Department, but currently works as a Senior Investigator with the District Attorney's Office.

20. In April 2016, Plaintiff re-financed two home mortgage loans so that Defendant SIERRA could become the owner and mortgagee of both loans.

21. As a result, Defendant SIERRA extended finances to Plaintiff's former mortgagees to pay them off in full, so that Defendant could now become the owner of and mortgagee for both loans, with the promise that Plaintiff would now pay to Defendant every month his regular mortgage payments consisting of both principal and interest, which amounts to money that was extended primarily for personal, family, or household purposes.

22. The account that is the subject of Defendant's unlawful activity is account number XXXXXXXXX3495, for a property located in the City of National City, County of San Diego.

23. Since the time of Defendant taking over ownership as the mortgagee of this account, Plaintiff has always made every single monthly payment to Defendant upon this account in a timely manner as agreed between the parties.

24. By email dated May 26, 2016, Defendant acknowledged that there was to be no escrow impound account and that the one that Defendant had created despite the parties' agreement would be closed.

25. The parties agreed that Plaintiff would pay all county taxes and insurance obligations on his own, without any escrow account being added by Defendant upon the account.

26. However, Defendant opened an escrow account despite the parties' agreement not to.

27. In November of 2016, Defendant paid the first installment of county taxes for tax year 2016-2017 with funds that Defendant diverted from Plaintiff's monthly payments into the escrow account.

28. On or about January 12, 2017, Plaintiff called Defendant to remind them that there was not supposed to be an escrow account and that the agreement is for Plaintiff to pay all county taxes and insurance on his own.

29. Defendant's agent "April" claimed that Plaintiff had failed to pay the county taxes, which was not true because Plaintiff had already paid all county taxes for this property in full for the year 2016 before Defendant even took over ownership and mortgagee of the account.

30. Plaintiff viewed the account history on the county tax assessor's website and confirmed that the claim he had failed to pay the taxes was not true.

31. April also claimed that Plaintiff was required to maintain an escrow impound account and that the account history shows that Plaintiff has failed to make payments into the escrow account for the life of the loan with Defendant.

32. Plaintiff informed her that such a claim was false, because the agreement going back to May of 2016 was that no escrow impound account would be created and

that Plaintiff would cover all taxes and insurance on his own obligation.

33. April persisted in claiming that Plaintiff was in default upon the account, so Plaintiff asked to speak to a supervisor.

34. However, April refused and hung up on Plaintiff.

35. On January 16, 2017, Plaintiff sent an email to complain about Defendant's conduct in repeatedly opening a false escrow impound account and to also complain about this customer service experience.

36. Also on January 16, 2017, Plaintiff filed a complaint with the Better Business Bureau as to Defendant's conduct in repeatedly opening a false escrow impound account and to also complain as to the manner in which he was treated by Defendant's customer service.

37. By letter dated January 18, 2017, Defendant sent Plaintiff a notice confirming that the escrow account would be closed as of January 25, 2017 at Plaintiff's requested.

38. On or about January 19, 2017, Defendant's agent Jessica contacted Plaintiff via telephone and informed him that the escrow account would be removed and the two agreed that Plaintiff would reimburse Defendant for the amount of taxes already paid by Defendant, and agreed that Plaintiff would reimburse them after he received his income tax refund in March.

39. The parties also agreed that Plaintiff would pay the next installment of taxes due later in the year 2017, and from there onward.

40. By email on January 24, 2017, Defendant's Chief Compliance Officer and General Counsel, Jeffrey Kibbey, sent an email to Plaintiff apologizing for the circumstances and assuring Plaintiff that the issue with his escrow/impound account had been resolved.

41. However, on January 26, 2017, Defendant sent Plaintiff another notice claiming that Defendant is required to maintain an escrow account to pay taxes and insurance, and also claiming that the escrow account is short and demanding that

Plaintiff pay $1,559.95 to bring the escrow account current.

42. On February 1, 2017, Plaintiff paid the first reimbursement payment of $130.03.

43. Thereafter, after receiving his income tax refund, Plaintiff paid to Defendant on March 15, 2017 the remaining balance of $1,430.37 as reimbursement for the county taxes already paid by Defendant, as agreed between the parties.

44. Plaintiff provided a cover letter and a note on the check memo that explained that this payment was not his regular monthly payment for March but was instead only to act as reimbursement for the county taxes already paid by Defendant, as agreed.

45. However, Defendant applied that payment to the principal in complete disregard of the parties' agreement and in complete disregard of Plaintiff's cover letter and note on the check explaining how the funds were to be applied.

46. Plaintiff had also already made his regular monthly payment for the month of March on March 9, 2017, which is confirmed by his account history online.

47. Plaintiff thereafter submitted his regular monthly payment for April on-time electronically via his bank, Altura Credit Union.

48. This April transmission listed both the address and account number ending 3495 in order for Defendant to know what account and what property to which the payment pertained, as has every other payment Plaintiff has made to Defendant.

49. Plaintiff's bank's confirmation number proves Defendant's receipt of such funds.

50. However, for some unexplained reason, Defendant applied the April payment to the wrong account, for Plaintiff's other property in the City of Temecula, on April 17, 2017.

51. Plaintiff's regular monthly payment for the month of April on that wrong account of $2,536.75 was also sent and received on-time.

52. Thereafter, on or about May 8, 2017, Plaintiff received a phone call from

Defendant claiming that Plaintiff was delinquent for the April payment upon account XXXXXXXXX3495.

53. Plaintiff protested and informed Defendant's agent that he had made April's payment.

54. On May 10, 2017, Plaintiff called Defendant to inform them that he discovered via the online activity that Defendant applied his April payment for account XXXXXXXXX3495 to the wrong account and requested that they correct their error and apply the funds to the correct account.

55. The agent claimed that Defendant "would look into it".

56. Also on May 10, 2017, Plaintiff discovered that, on May 3, 2017, Defendant SIERRA furnished to the consumer credit reporting agencies Experian, Equifax, and Trans Union the false, misleading, and inaccurate information that Plaintiff's last date of payment was March 1, 2017, that he failed to make his payment for the month of April 2017, that he is past due in the amount of $1,444.00 for the month of April 2017, and is therefore at least 30-days delinquent upon his account.

57. This is the only negative, delinquent account on any of Plaintiff's credit reports.

58. This manner of credit reporting has created the absolutely false and misleading impression that Plaintiff has either mismanaged his financial obligations or is one who deliberately refuses to pay his financial obligations, either of which are undeniably false.

59. This manner of credit reporting has also caused Plaintiff's credit score to drop from 708 to 666, which has caused great frustration, stress, anxiety, and disappointment for Plaintiff because he has taken great pride in building his credit history to the highest extent possible so that he can ultimately re-finance his home mortgage loan with another company who he can trust to handle his account properly, unlike Defendant.

60. As a direct result of Defendant's false credit reporting, Plaintiff has been

deprived of the ability to seek re-financing at a current favorable market rate with a different company who Plaintiff could trust to handle his account properly.

61. On May 11, 2017, Plaintiff sent an email explaining the mistake and requested that they correct their error and apply the funds to the correct account.

62. On May 14, 2017, Plaintiff sent a second email after he had not received any response to his May 11th email.

63. Plaintiff has never received a response to either his May 11th or May 14th emails.

64. However, on May 15, 2017, Plaintiff received a phone call upon his personal wireless cellular phone from Defendant's collection department.

65. Upon answering the phone call, Plaintiff heard a robotic message informing Plaintiff that the call was coming from the "collection department" of Defendant's business.

66. Plaintiff hung up on the robot message, but then called customer service directly and informed Defendant's agent "Nadia" of the problem created by Defendant.

67. Nadia claimed that there was an open task on this account to fix the problem, and Nadia promised that Defendant would notify all three credit reporting agencies that Plaintiff was not late/delinquent upon the account.

68. Plaintiff also requested of Nadia that Defendant stop calling him, and Nadia then promised to "make a note of that".

69. Therefore, Plaintiff explicitly revoked any previously-given consent for Defendant to place calls to Plaintiff's wireless cellular phone with artificial/pre-recorded voice messages and/or via automatic telephone dialing system ("ATDS").

70. However, Plaintiff has since received at least three more phone calls from Defendant's collection department upon his wireless cellular telephone.

71. As these calls were for the purpose of debt collection, they were not made for emergency purposes, as defined by 47 U.S.C. § 227(b)(1)(A)(i).

72. Upon information and belief, per its business practices, each of

Defendant's calls were placed using an "automatic telephone dialing system" ("ATDS"), as defined by 47 U.S.C. § 227(a)(1) in addition to the artificial or prerecorded voice messages, as prohibited by 47 U.S.C. § 227(b)(1)(A).

73. An ATDS is equipment that has the capacity to store or produce telephone numbers to be called, using a random or sequential number generator, and utilizes such equipment to dial such numbers, as defined in 47 U.S.C. § 227(a)(1)(A)-(B). Automatic telephone dialing systems place calls without human intervention until a connection is made with a person on the receiving end of the call, at which time the dialers attempt to connect the recipient with a live agent of the debt collector.

74. Upon information and belief, the ATDS used by Defendant to call Plaintiff has the capacity to store or produce telephone numbers to be called, using a random or sequential number generator.

75. Each individual phone call placed by Defendant SIERRA caused Plaintiff to feel that he has had no legal protections at all as against Defendant's on-going failures to handle his account properly and had no means of preventing Defendant from continuing to call him repeatedly during working hours, thereby disrupting his ability to focus upon his work as a D.A. Investigator.

76. On May 26, 2017, Plaintiff received in the mail a written communication from Defendant claiming that he still owes them a past due amount of $1,444.00 in addition to his upcoming June payment.

77. Any claim that Plaintiff is past due in the amount of $1,444.00 is false, because he has made all monthly payments upon this mortgage as required of him.

78. As a result of Defendant's unfair, oppressive, and abusive conduct in connection with their handling of Plaintiff's account and its resulting debt collection activity as explained above, including each collection call received by Plaintiff and including each collection letter received by Plaintiff, Plaintiff has suffered mental anguish by way of embarrassment, shame, anxiety, and feelings of despair over the fact that Defendant has continued its false collection efforts from him directly despite his

having previously placed Defendant on notice multiple times of its errors, which has placed Plaintiff in a position of distrust and feelings of despair over whether Defendant might actually proceed with unlawful foreclosure efforts even though Plaintiff has never actually missed a monthly mortgage payment.

## FIRST CAUSE OF ACTION
## NEGLIGENT AND WILLFUL VIOLATIONS OF TCPA

79. Plaintiff re-alleges and incorporates by reference the above paragraphs, as though set forth fully herein.

80. Defendant called Plaintiff multiple times upon his personal wireless cellular telephone with an ATDS and/or pre-recorded/artificial voice messages after Plaintiff explicitly revoked any consent for Defendant SIERRA to place such calls to him.

81. It is reasonable to infer from the use of an artificial or prerecorded voice and the commercial nature of the calls that a debt collector used an ATDS in calling the plaintiff. *See*, *Vaccaro v. CVS Pharm., Inc.*, 2013 U.S. Dist. LEXIS 99991, at *9 (S.D. Cal. July 16, 2013); *Vance v. Bureau of Collection Recovery LLC*, 2011 U.S. Dist. LEXIS 24908, at **8-9 (N.D. Ill. Mar. 11, 2011).

82. Furthermore, each single call that was placed with both an ATDS and a pre-recorded/artificial voice message entitles Plaintiff to two violations per call. *Lary v. Trinity Physician Fin. & Ins. Servs.*, 780 F.3d 1101, 1105 (11th Cir. 2015) (holding that a single call using both an ATDS and a prerecorded voice constitutes two violations of the TCPA).

83. The forgoing acts and omissions constitute numerous and multiple violations of the TCPA, including but not limited to each and everyone one of the above-cited provisions of 47 U.S.C. § 227, *et seq*.

84. Each violation was willful, as Defendant's agent Nadia promised to notate the account to show that Plaintiff explicitly instructed Defendant to stop calling him,

and therefore Defendant knew or should have known that it should not have placed any calls to Plaintiff upon this account, and therefore Defendant acted with reckless disregard of Plaintiff's right to be free from such communications.

85. As a result of Defendant's negligent violations of 47 U.S.C. § 227 *et seq*., Plaintiff is entitled to an award of $500.00 in statutory damages, for each and every negligent violation, pursuant to 47 U.S.C. § 227(b)(3)(B), jointly and severally as from both Defendants.

86. As a result of Defendant's knowing and/or willful violations of 47 U.S.C. § 227 et seq., Plaintiff is entitled to an award of up to $1,500.00 in statutory damages, for each and every violation, pursuant to 47 U.S.C. § 227(b)(3)(B) and 47 U.S.C. § 227(b)(3)(C), jointly and severally as from both Defendants.

## SECOND CAUSE OF ACTION
## VIOLATIONS OF ROSENTHAL ACT

87. Plaintiff re-alleges and incorporates by reference the above paragraphs, as though set forth fully herein.

88. Calif. Civ. Code § 1788.17 incorporates specific prohibitions as codified in the FDCPA and makes them direct violations of the Rosenthal Act, as this Section reads as follows:

> Notwithstanding any other provision of this title, every debt collector collecting or attempting to collect a consumer debt shall comply with the provisions of Sections 1692b to 1692j, inclusive, of, and shall be subject to the remedies in Section 1692k of, Title 15 of the United States Code. However, subsection (11) of Section 1692e and Section 1692g shall not apply to any person specified in paragraphs (A) and (B) of subsection (6) of Section 1692a of Title 15 of the United States Code or that person's principal. The references to federal codes in this section refer to those codes as they read January 1, 2001.

89. This Section does not incorporate the definitions of the FDCPA as codified at 15 U.S.C. §1692a, and therefore the definitions of the FDCPA have absolutely no bearing upon direct liability under this section of the Rosenthal Act for a debt collector

who meets the definitions within Calif. Civ. Code 1788.2.[1]

90. Defendant SIERRA meets the applicable definitions of the Rosenthal Act as explained above, in particular the definitions of "debt collector" within the meaning of California Civil Code § 1788.2(c) and "debt collection" within the meaning of California Civil Code § 1788.2(b), as Defendant SIERRA is one who, in the ordinary course of business, regularly, and on behalf of itself, engages in debt collection of consumer debts.

91. By claiming multiple times that Plaintiff owed funds to Defendant for an escrow impound account that Defendant specifically agreed via email in May of 2016 to not create upon this account, Defendant SIERRA violated 15 U.S.C. §1692f of the FDCPA, as incorporated into the Rosenthal Act via Calif. Civ. Code §1788.17 to create direct liability thereunder, by using unfair and unconscionable means to attempt to collect the consumer debt; and also violated 15 U.S.C. § 1692e of the FDCPA, as incorporated into the Rosenthal Act via Calif. Civ. Code §1788.17 to create direct liability thereunder, by false, deceptive, and/or misleading representations in connection with the collect of the consumer debt; and also violated 15 U.S.C. § 1692e(2)(A) of the FDCPA, as incorporated into the Rosenthal Act via Calif. Civ. Code §1788.17 to create direct liability thereunder, by falsely representing the character, amount, or legal status of the consumer debt; and also violated 15 U.S.C. §1692e(10) of the FDCPA, as incorporated into the Rosenthal Act via Calif. Civ. Code §1788.17 to create direct liability thereunder, by using false representation and deceptive means to attempt to collect the consumer debt.

92. By misapplying Plaintiff's April 2017 monthly payment upon this account

---

[1] See *Townsend v. Nat'l Arbitration Forum, Inc.*, 2012 U.S. Dist. LEXIS 590, at **40-41, (Cent. Dist. Calif. Jan. 4, 2012), "Unlike the FDCPA, the RFDCPA does not exempt creditors who regularly collect their own debts from its application. *Id.*; *see also* Cal. Civ. Code, § 1788.17 (generally adopting debt collection practice requirements and remedies of FDCPA, but not adopting FDCPA's definitions)."

to the wrong account for an entirely different property and then claiming that Plaintiff was delinquent upon this account and undertake multiple efforts to attempt to collect this monthly amount, Defendant SIERRA violated 15 U.S.C. §§1692f, 1692e, 1692e(2)(A), and 1692e(10) of the FDCPA, all of which have been incorporated into the Rosenthal Act via Calif. Civ. Code §1788.17 to create direct liability thereunder.

93. By continuing to call Plaintiff after Plaintiff specifically instructed Defendant to stop calling him, Defendant violated 15 U.S.C. §1692c(a)(1) of the FDCPA, as incorporated into the Rosenthal Act via Calif. Civ. Code §1788.17 to create direct liability thereunder.

94. Defendant SIERRA also violated 15 U.S.C. §§1692f, 1692e, 1692e(2)(A), 1692e(8), and 1692e(10) of the FDCPA, as incorporated into the Rosenthal Act via Calif. Civ. Code 1788.17 to create direct liability thereunder, by furnishing the false information to the consumer credit reporting agencies that Plaintiff was delinquent upon the account for his April 2017 payment, when in reality Defendant knew or should have known that such a claim was false since Plaintiff did, in fact, make his April 2017 payment as agreed and the problem was that Defendant applied the payment to the wrong account for a different property entirely.

95. By claiming in May of 2016 that Plaintiff is past due in the amount of $1,444.00, which is absolutely false, Defendant SIERRA has also violated 15 U.S.C. §§1692f, 1692e, 1692e(2)(A), and 1692e(10) of the FDCPA, all of which have been incorporated into the Rosenthal Act via Calif. Civ. Code §1788.17 to create direct liability thereunder.

96. Plaintiff is informed and believes that all of the above violations were willful, because Defendant has clearly failed to review its account history and account notes prior to initiating debt collection efforts for the false escrow impound account and has failed to ensure payments were applied to the correct account in April of 2017 prior to initiating derogatory credit furnishing, which confirms that Defendant's business practices are so flawed to the point where Defendant has acted with an unjustifiably

high risk of harm that is either known or so obvious that it should have been known.

97. As a result, Plaintiff has suffered emotional distress and mental anguish as identified above, in addition to harm to his credit profile, credit score, and creditworthiness.

## THIRD CAUSE OF ACTION
## CALIFORNIA CCRAA

98. Plaintiff repeats, re-alleges, and incorporates by reference, all other paragraphs as if fully stated herein.

99. As the furnisher of information to credit reporting agencies, Defendant SIERRA has always been obligated to not furnish information on a specific transaction or experience to any consumer credit reporting agency if they knew or should have known the information was incomplete or inaccurate, as required by Calif. Civ. Code § 1785.25(a) of the California CCRA.

100. Defendant violated its obligations under §1785.25(a) because, in May of 2017, it reported the false, misleading, and inaccurate information that Plaintiff's last date of payment was March 1, 2017, that he failed to make his payment for the month of April 2017, that he is past due in the amount of $1,444.00 for the month of April 2017, and is therefore at least 30-days delinquent upon his account.

101. Defendant knew or should have known of its obligation to not report such false information, as Defendant has been repeatedly put on direct notice by Plaintiff of Defendant's repeated errors in the handling of the account.

102. These violations were willful, as Defendant could have easily reviewed the account records (and should have reviewed prior to taking any action upon the account) to know that any claim that Plaintiff missed his April 2017 monthly payment was false, yet it willfully and knowingly disregarded any account review prior to initiating the derogatory credit reporting.

103. Defendant's violations have created the absolutely false and misleading

impression that Plaintiff is someone who either mismanages his financial obligations or is someone who deliberately refuses to pay his financial obligations, either of which are undeniably false.

104. Defendant's violations described above have caused undue mental anguish and stress upon Plaintiff, in that he has suffered anxiety, nervousness, humiliation, loss of sleep, lack of faith in the credit system, and feelings of despair and hopelessness.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays that judgment be entered against each and every Defendant, jointly and severally, and Plaintiff be awarded damages from Defendants as follows:

- As a result of negligent violations of 47 U.S.C. § 227(b)(1), Plaintiff seeks $500.00 in statutory damages for each and every violation pursuant to 47 U.S.C. § 227(b)(3)(B);
- As a result of knowing and/or willful violations of 47 U.S.C. § 227(b)(1), Plaintiff seeks $1,500.00 in statutory damages for each and every violation pursuant to 47 U.S.C. § 227(b)(3)(B);
- Injunctive relief prohibiting Defendant from engaging in such conduct in the future pursuant to 47 U.S.C. § 227(b)(3)(A);
- An award of statutory damages of $1,000.00, pursuant to Cal. Civ. Code § 1788.30(b);
- An award of actual damages in the amount of $25,000.00, or as the jury may allow, pursuant to California Civil Code § 1788.30(a);
- An award of costs of litigation and reasonable attorney's fees, pursuant to Cal. Civ. Code § 1788.30(c);
- Actual damages in the amount of $50,000.00, or as the jury may allow, for negligent violations of Calif. Civ. Code § 1785.25(a), pursuant to Calif. Civ. Code § 1785.31(a)(1);

- Actual damages as identified above, plus punitive damages of $5,000.00 for each and every willful violation of Calif. Civ. Code § 1785.25(a), pursuant to Calif. Civ. Code § 1785.31(a)(2)(A)-(C);
- Injunctive relief pursuant to Calif. Civ. Code § 1785.31(b); and
- An award of costs of litigation and attorneys' fees, pursuant to Calif. Civ. Code § 1785.31(d).

Pursuant to the seventh amendment to the Constitution of the United States of America, Plaintiff is entitled to, and demands, a trial by jury.

Dated: May 27, 2017

Respectfully submitted,

SEMNAR & HARTMAN, LLP

By: *<u>/s/ Jared M. Hartman</u>*
Jared M. Hartman, Esq.
Attorneys for Plaintiff